Case 4:23-cv-03029   Document 64   Filed on 08/22/25 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
August 22, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| DOMIMECHA DENMAN, AS SURVIVING PARENT OF DILLON DENMAN, | § § § § § | |
| | § | CIVIL ACTION NO. H-23-3029 |
| Plaintiff, | § | |
| v. | § § | |
| WILHOIT PROPERTIES, INC., *et al.*, | § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

This sad case arises out of the shooting death of Domimecha Denman's 17-year-old son, Dillon. Ms. Denman seeks to hold the apartment complex where Dillon was shot liable for his death. Based on the pleadings, the briefing, the record, and the applicable law, this court grants summary judgment to the defendants on all claims. The reasons for this ruling are below.[1]

**I.   Background**

On July 1, 2022, Dillon Denman was shot and killed in front of the property management office of the Kimberly Pointe Apartments in Houston. One of Dillon's friends, Cameron Allen, was also shot and killed. The police arrested Jamil Early Syrie Jr., age 18, and charged him with the murders. Syrie is awaiting trial in Texas state court for capital murder.

Neither Dillon nor Cameron lived at the Kimberly Pointe Apartments. Ms. Denman alleges that Dillon went with Cameron to the Kimberly Pointe Apartments on July 1, 2022, to attend a

---

[1] The parties' evidentiary objections are addressed as relevant to this opinion. The evidentiary objections not addressed in this opinion are denied as moot. The defendants' motion to exclude Ms. Denman's late discovery, (Docket Entry No. 47), is denied as moot. The request for discovery sanctions, (*id.* at 6–9), is denied. Ms. Denman's motion for sanctions for spoliation of video evidence is denied as moot because the only relief it seeks is a jury instruction. (Docket Entry No. 43).

pool party and spend the night with Cameron's aunt, Alecia Palomo. (Docket Entry No. 39 at 4); (Docket Entry No. 48 at 1). The defendants allege that Dillon had walked past the Kimberly Pointe Apartments and trespassed into the parking lot before he was shot. (Docket Entry No. 32 at 7).

The defendants have owned and managed the Kimberly Pointe Apartments since October 2017. (Docket Entry No. 32-3 at 7) (¶ 4). Ms. Denman asserted claims against them for premises liability and negligence. (Docket Entry No. 1-2). The defendants have moved for summary judgment on all claims. (Docket Entry No. 32). Because Ms. Denman abandoned her negligence claims in her summary judgment response, (Docket Entry No. 39 at 19), those claims are dismissed. The issue is whether Ms. Denman has pointed to evidence raising genuine and material factual disputes as to her premises liability claim.

## II.   The Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

2

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ'

3

on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250).

## III.   The Premises Liability Claim

"Premises liability is a special form of negligence where the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). The Texas Supreme Court has "avoided imposing a universal duty on landowners to protect persons or their property from third-party criminal acts." *Trammell Crow Cent. Texas, Ltd. v. Gutierrez*, 267 S.W.3d 9, 10 (Tex. 2008). But Texas law also recognizes "that, in some circumstances, the risk of a crime may be sufficiently unreasonable and foreseeable to justify imposing a duty on landowners to protect invitees while they are on the landowner's property." *Id.* at 10–11. To show that such a duty existed, a plaintiff must show both foreseeability and an unreasonable risk of harm. *UDR Tex. Props., L.P. v. Petrie*, 517 S.W.3d 98, 99 (Tex. 2017). The standard is different for trespassers: the only duty owed by a property owner to a trespasser "is not to injure him wilfully, wantonly, or through gross negligence." *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (per curiam) (quoting *Tex. Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex. 1997)).

"Whether a duty exists is a question of law for the court to decide." *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). This court concludes that the defendants did not have a duty to protect people at the Kimberly Pointe Apartments from violent crimes like the one causing Dillon's death. Even if Dillon was an invitee, the defendants did not owe him a duty to protect him from being shot and killed by a third party because the crime was not foreseeable and invitees at the Kimberly Pointe Apartments did not face an unreasonable risk of harm. The reasons for this ruling are set out below.

4

A.     The Premises

An affidavit from Sandra Dilley, the defendants' corporate representative, states that "[t]he shooting did not occur within the gated portion of Kimberly Pointe Apartments where tenants reside. The incident occurred in front of the property management office, which is attached outside the iron-gated portion of Kimberly Pointe." (Docket Entry No. 32-3 at 9) (¶ 17);[2] (*see also* Docket Entry No. 48-7 at 4) (A police officer responded to "a possible shooting of two people in the front parking lot of the leasing office" at the Kimberly Pointe Apartments and located Dillon's body "just west of the front door of the leasing office."). There is no contrary evidence as to the location of the shooting. Although the defendants' briefs characterize the shooting as occurring "outside the gated apartment complex," the evidence shows that the defendants owned and managed the area in front of the property management office where Dillon was shot. (Docket Entry No. 39-2 at 6); (Docket Entry No. 39-3 at 11); (Docket Entry No. 39-1). Ms. Dilley testified that the shooting took place on the defendants' property. (Docket Entry No. 48-3 at 6); (Docket Entry No. 61-1 at 95–96). The court concludes that Dillon was shot on property owned and controlled by the defendants.

B.     Foreseeability

When analyzing whether the defendants owed a duty to protect Dillon from this third-party criminal act, the first question is whether the risk was foreseeable. "Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable."

---

[2] Because Ms. Dilley's affidavit is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that [she] is competent to testify on the matters stated," it is competent summary judgment evidence. *See* FED. R. CIV. P. 56(c)(4). The court does not view Ms. Dilley's affidavit as self-serving, but even if it is, "self-serving evidence may not be discounted on that basis alone." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021). Ms. Denman's objection to Ms. Dilley's affidavit is overruled.

*Timberwalk*, 972 S.W.2d at 756 (quoting reference omitted).  Whether the risk was foreseeable "must not be determined in hindsight but rather in light of what the premises owner knew or should have known before the criminal act occurred." *Id.* at 757.  "Foreseeability is established through evidence of 'specific previous crimes on or near the premises.'" *Trammell Crow*, 267 S.W.3d at 12 (quoting *Timberwalk*, 972 S.W.2d at 756).  Texas courts weigh the evidence of prior crimes using five factors: similarity, proximity, recency, frequency, and publicity.  *Id.*  These factors are interrelated, and courts "must weigh the evidence using all the factors." *Timberwalk*, 972 S.W.2d at 759.

Ms. Denman's foreseeability argument turns on more than 2,600 pages of what she labels "Harris County Constable Precinct 4 Reports at Kimberly Pointe."  (*See* Docket Entry No. 48 at 3–5); (Docket Entry No. 48-5); (*see also* Docket Entry No. 48-6) (summary chart).  The reports appear to document calls related to incidents at or near the Kimberly Pointe Apartments between 2019 and 2022.  Ms. Denman provides no affidavit, testimony, or expert witness that authenticates the calls-for-service reports she submitted or that explains what they are or where they came from.  The court cannot determine the reports' authenticity from evidence in the record or from the reports themselves.  *See* FED. R. EVID. 901, 902.  The reports are hearsay, and Ms. Denman does not show that the reports fall under any hearsay exception.  Because Ms. Denman has not shown that the calls-for-service reports could be presented in a form that would be admissible at trial, they are not proper summary judgment evidence.  *See* FED. R. CIV. P. 56(c); FED. R. EVID. 801, 802, 901; (*see also* Docket Entry No. 49 at 2) (the defendants' objections to the calls-for-service data).[3]

---

[3] The problem is not that 911 calls are never admissible, but rather that Ms. Denman has not shown that the 2,600 pages of documents she relies on could be authenticated and would be admitted at trial over the defendants' objections under Rules 802 and 901.

6

The defendants presented their own crime data and analysis in support of their argument that Dillon's death was not foreseeable. The defense expert, Karim Vellani, is the president of a security consulting firm and "specialize[s] in crime analysis and security risk assessment and mitigation." (Docket Entry No. 32-8 at 1–2).[4] His nearly three decades of experience include developing "a crime analysis methodology" and "assess[ing] crime threats at thousands of facilities." (*Id.* at 2). Mr. Vellani "analyzed all crime records produced in this matter and independently requested additional crime records from [the Harris County Sheriff's Office] and [the Harris County Constable Precinct 4] for Kimberly Pointe Apartments and the area from July 1, 2019[,] to July 1, 2022." (*Id.* at 4). His report includes a table summarizing the data. (*Id.* at 42–43). Mr. Vellani concluded that the Kimberly Pointe Apartments "had a low rate of stranger violent crime" and that there was "no pattern or trend of similar crime" at the Kimberly Pointe Apartments before Dillon's death. (*Id.* at 3, 57).

Ms. Denman responded by picking out five of the Harris County Incident Reports and arguing that they show that the defendants should have foreseen Dillon's death. (Docket Entry No. 39 at 15–16); (*see* Docket Entry Nos. 39-4, 39-5, 39-6, 39-7, 39-8).[5] The five incident reports Ms. Denman submitted relate to: an aggravated robbery involving a firearm in June 2021, (Docket Entry No. 39-4); an assault or "juvenile disturbance" in October 2021, (Docket Entry No. 39-5);[6] a discharge of a firearm in November 2021, (Docket Entry No. 39-6); an aggravated assault

---

[4] The defense expert's affidavit and report satisfy Federal Rules of Evidence 702 and 703 and Federal Rule of Civil Procedure 56(c). Ms. Denman's objection to this evidence is overruled.
[5] Although not clear, it appears that Ms. Denman chose these incident reports from the records that Mr. Vellani analyzed.
[6] The report says "ASSAULT" at the top, but the synopsis says that the report "was generated for a juvenile disturbance." (Docket Entry No. 39-5).

7

involving the shooting of a juvenile in a parking lot in January 2022, (Docket Entry No. 39-7); and an unlawful carrying of a weapon in February 2022, (Docket Entry No. 39-8).

Each of these incidents occurred at the Kimberly Pointe Apartments "or in its immediate vicinity." *See Timberwalk*, 972 S.W.2d at 757. At least two of the incidents involve violent crimes. (Docket Entry Nos. 39-4, 39-7). All five incidents are similar to Dillon's shooting in that they involve juveniles, guns, or both. *See Trammell Crow*, 267 S.W.3d at 16 (The Texas Supreme Court has "recognized that crimes fitting one category can relate to or result in crimes of another category."). The aggravated assault in which a youth was shot "while walking in the parking lot," (Docket Entry No. 39-7), is most similar to Dillon's shooting. However, that incident occurred in the morning, while Dillon was shot at night.

The recency and frequency factors weigh against a finding of foreseeability based on these five incidents. *See Trammell Crow*, 267 S.W.3d at 15 ("Although the five factors present distinct considerations," courts may "examine[] recency and frequency in tandem."). Even if the court considers all the reports, they show five crimes over the 13 months before Dillon's death, or roughly one crime every 79 days. "[T]he occurrence of a few crimes over an extended time period[] negates the foreseeability element." *Timberwalk*, 972 S.W.2d at 758; *compare, e.g.*, *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 657 (Tex. 1999) (plurality opinion) ("a frequency of roughly one violent crime every four days" near a parking garage made a subsequent rape in the parking garage foreseeable), *with Trammell Crow*, 267 S.W.3d at 15 (data showing one violent crime every 69 days in the relevant area weighed against finding foreseeability).

As for publicity, these incidents "cannot make future crime foreseeable if nobody knows or should have known that [they] occurred." *Timberwalk*, 972 S.W.2d at 759. The defendants had "no duty to regularly inspect criminal records to determine the risk of crime in the area." *Id.* There

8

is no evidence that the defendants had actual knowledge of these five incidents. Nor is there evidence that any of these incidents, or other similar crimes at or near the Kimberly Pointe Apartments, were "widely publicized." *See id.* ("[W]hen the occurrence of criminal activity is widely publicized, a landlord can be expected to have knowledge of such crimes.").

Two pieces of competent summary judgment evidence go to the defendants' knowledge of crime at or near the Kimberly Pointe Apartments. First, Ms. Palomo, a resident of the Kimberly Pointe Apartments, testified that she "orally expressed safety and other complaints/concerns related to the property" to the property manager at some point "prior to [her] nephew being shot." (Docket Entry No. 39-9 at 2).[7] Second, Ms. Dilley testified that "Officers from Harris County Constable Precinct 4 visited the Kimberly Pointe Apartments Management Office" before July 2022 and "requested and recommended that the community pool be closed afterhours due to a recent surge in young people conducting after-hour pool parties increasing the potential for crime at apartments in the area." (Docket Entry No. 32-3 at 8) (¶ 12); (*see also* Docket Entry No. 61-1 at 79–80). Those statements are not sufficient to create a genuine factual dispute material to determining whether the defendants should have anticipated a homicide on their property. Although the police visit may have put the defendants on notice of risks related to after-hours pool parties, the defendants responded by closing the Kimberly Pointe pool after 5:30 P.M. (Docket Entry No. 32-3 at 8) (¶ 12). Receiving a warning about after-hour pool parties—a warning that the defendants acted on by closing the pool—did not make a subsequent homicide foreseeable.

---

[7] Ms. Palomo's affidavit establishes her personal knowledge and her competency to testify as to her prior complaints and concerns about security and sets out facts as to those issues that would be admissible in evidence. *See* FED. R. CIV. P. 56(c)(4). To the extent that the defendants object to this portion of the affidavit, (*see* Docket Entry No. 40 at 2), that objection is overruled.

The balance of the five factors does not support a conclusion that the defendants should have foreseen shooting deaths in front of the apartment complex. Because there is no competent summary judgment evidence of "specific previous crimes" at or near the Kimberly Pointe Apartments that would have put the defendants on notice of the danger of shooting deaths like Dillon's, Ms. Denman has failed to raise a fact dispute as to foreseeability. *See Trammell Crow*, 267 S.W.3d at 12, 17 (quoting *Timberwalk*, 972 S.W.2d at 756).

Considering the calls-for-service reports does not change the analysis. Ms. Denman contends that the defendants should have foreseen Dillon's death because there were 37 reports of burglary or theft at the Kimberly Pointe Apartments in 2021; three reports of aggravated robbery in 2021; two reports of aggravated assault between January and July 2022; and 30 reports of firearm discharges between January and July 2022. (Docket Entry No. 48 at 4) (citing "Exhibits O; P").

Previous crimes must be "sufficiently similar to the crime in question as to place the landowner on notice of the specific danger." *Trammell Crow*, 267 S.W.3d at 16 (quoting *Timberwalk*, 972 S.W.2d at 758). Foreseeability does not require that "the exact sequence of events that produced the harm[] be foreseeable." *Timberwalk*, 972 S.W.2d at 756 (quoting reference omitted). This court cannot categorically reject reports of burglary and theft as part of its foreseeability analysis because, in some circumstances, property crimes can make personal crimes foreseeable. *See, e.g.*, *id.* at 758 ("Property crimes may expose a dangerous condition that could facilitate personal crimes, as when apartments are targeted repeatedly by thieves."); *Trammell Crow*, 267 S.W.3d at 16 ("[A] thief entering a dwelling to steal property may also commit personal crimes.").

10

Nonetheless, Ms. Denman does not explain how the reports of burglary and theft—property crimes—made Dillon's murder foreseeable. Dillon was shot in the parking lot in front of the property management office. According to Ms. Denman's summary chart, some of the burglaries and thefts at the Kimberly Pointe Apartments in 2021 and 2022 involved cars, and three occurred in the "parking lot." (Docket Entry No. 48-6 at 1, 5, 7). It is not clear whether any burglaries or thefts occurred in the parking lot in front of the property management office, which is a distinct area of the Kimberly Pointe Apartments outside of the residential area. (*See* Docket Entry No. 32-3 at 9) (¶ 17). More importantly, the police reports indicate that Dillon's murder occurred during a gathering of a group of teenagers. (Docket Entry No. 48-7). There is no evidence that Dillon's shooting death grew out of, or was in any way related to, an attempted robbery, burglary, or theft. The calls for service may suggest that the Kimberly Pointe Apartments had a problem with car burglaries, but they do not suggest that the defendants should have foreseen a shooting death like Dillon's.

In *Trammell Crow Central Texas v. Gutierrez*, the Texas Supreme Court considered whether a murder in a shopping mall parking lot was foreseeable. 267 S.W.3d at 12–17. The court noted that it had previously "held that reports of vandalism, theft, and neighborhood disturbances are not enough to make a stabbing death foreseeable." *Id.* at 13. The court held in *Trammell Crow* that, "although the repeated occurrences of theft, vandalism, and simple assaults at the [mall] signal that future property crimes are possible, they do not suggest the likelihood of murder." *Id.* The court "limit[ed] [its] review to the ten instances of violent crime that took place at the [mall] during the two years prior to [the murder]." *Id.* This court will take the same approach.

11

Ms. Denman points to five reports of violent crime during the 18 months before Dillon's death: three aggravated robberies in 2021 and two aggravated assaults between January and July 2022. (Docket Entry No. 48 at 4). That is not a violent crime rate sufficient to make the murders foreseeable. *Cf. Trammell Crow*, 267 S.W.3d at 15 (one violent crime every 69 days weighed against a finding of foreseeability). Including the reports of gunshots changes the frequency analysis some, but not as much as Ms. Denman contends. The record shows that some of the firearm discharges were the subject of multiple calls, and two may have been callers mistaking New Year's Eve fireworks for gunshots. The uncertainty of the circumstances surrounding these reports makes them an unreliable representation of criminal activity and does not support an inference that the shooting deaths were foreseeable.

Ms. Denman argues that "[s]ome of these reports of gunfire in 2022, the latest on May 4, 2022, came directly from Amanda White and Gina Lopez, [the defendants'] leasing managers." (Docket Entry No. 48 at 4). The record shows three days in 2022 on which Ms. White and Ms. Lopez reported hearing gunshots: February 1, 2022; February 22, 2022;[8] and May 4, 2022. (Docket Entry No. 48-6 at 1–3). There is no other evidence that the defendants knew or should have known about the incidents reported in the service calls. There is no evidence of widespread publicity as to any of the crimes reported in the service calls. Two of the three calls made by the defendants' employees did not result in a police report. (Docket Entry No. 48-4 at 3, 6) (Mr. Vellani testified that no police report was created based on Ms. Lopez's call on February 22, 2022, or Ms. White's call on May 4, 2022.).

---

[8] Ms. White called on February 23, 2022, to report a shooting the day before, which is presumably the same shooting reported by Ms. Lopez on February 22, 2022. (Docket Entry No. 48-6 at 2).

Even if the calls-for-service reports were competent summary judgment evidence, which they are not, they do not support the conclusion that Dillon's murder was foreseeable. Ms. Denman points to calls for service occurring within 18 months before Dillon's death and involving reported incidents at or near the Kimberly Pointe Apartments. But those reports do not show a frequent occurrence of violent crimes, much less a double murder. The three reports of gunshots made by the defendants' employees, two of which the police concluded did not warrant a report, do not support an inference that the defendants should have foreseen a homicide in front of its property management office. Based on the evidence presented to this court, third-party violent crime similar to what caused Dillon's death was extremely infrequent, if not unprecedented, at the Kimberly Pointe Apartments.

Because Dillon's murder was not foreseeable, the defendants did not have a duty to prevent the shooting.

### C.  An Unreasonable Risk of Harm

Ms. Denman has also failed to raise a factual dispute material to determining whether the risk of harm was unreasonable. Under Texas law, "a risk must be both foreseeable *and* unreasonable to impose a duty on a property owner." *UDR Tex. Props., L.P.*, 517 S.W.3d at 99, 101 (reversing a lower court decision that assessed only foreseeability and did not separately address the reasonableness of the risk of harm). The foreseeability inquiry, including the five factors addressed above, is "the beginning, not the end, of the analysis in determining the extent of the duty to protect against criminal acts of third parties." *Id.* at 101 (quoting *Timberwalk*, 972 S.W.2d at 756); *see also id.* at 102 ("We designed the *Timberwalk* factors to measure foreseeability; their application cannot, without more, determine the reasonableness of a risk of harm.").

"A risk is unreasonable when the risk of a foreseeable crime outweighs the burden placed on property owners—and society at large—to prevent the risk." *Id.* at 103. "The unreasonableness inquiry . . . explores the policy implications of imposing a legal duty to protect against foreseeable criminal conduct." *Id.* "This includes whether a duty would require conspicuous security at every point of potential contact between a patron and a criminal or require adoption of extraordinary measures to prevent a similar occurrence in the future." *Id.* (quotation marks and quoting reference omitted). Courts consider "the social utility of the actor's conduct, the consequences of imposing the burden on the actor, and any other relevant competing individual and social interests implicated by the facts of the case." *Id.* at 101 (quoting *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex. 2002)).

The only evidence that Ms. Denman cites for the "unreasonable risk of harm" factor is Ms. Dilley's testimony. (*See* Docket Entry No. 62 at 1–2). Ms. Dilley testified that the defendants had the following security measures in place at the Kimberly Pointe Apartments: surveillance cameras, (Docket Entry No. 61-1 at 34–35); an "8-foot wrought-iron fence" around the property, (*id.* at 35, 75–76);[9] a padlock locking the pool when it was closed, (*id.* at 40, 81, 89–90); lighting and regular light checks, (*id.* at 46, 50); regular staff meetings to discuss security, (*id.* at 39, 60, 62); employees walking around the complex throughout the day and keeping an eye out for issues, (*id.* at 71–74, 85); and signs prohibiting trespassing and guns, (*id.* at 76, 78). Ms. Dilley also testified that the Kimberly Pointe Apartments management meets with and follows recommendations from law enforcement, and that police officers drive through the neighborhood and the Kimberly Point

---

[9] A police report states that on the night of the shooting, "[t]he front exit gates were broken which allows access in and out at will by anyone other than the residents." (Docket Entry No. 48-7 at 4). But the unrebutted evidence is that the shooting occurred in the parking lot, outside the gates. (Docket Entry No. 32-3 at 9) (¶ 17). The shooter did not gain access to the parking lot because of a broken gate.

14

Apartments. (*Id.* at 79–81). Ms. Dilley testified that the pool was closed and locked after business hours, based on a recommendation from law enforcement. (*Id.* at 88); (*see also* Docket Entry No. 32-3 at 8). All of that demonstrates reasonable care. The court disagrees with Ms. Denman's contention that Ms. Dilley's testimony did not provide sufficient detail or certainty about the defendants' security measures. (*See* Docket Entry No. 62 at 1–2).

Ms. Denman argues that the defendants should have had "security patrolling on site that night." (Docket Entry No. 39 at 18–19). There is no basis in the record to believe that a security patrol would have prevented Dillon's death.[10] Mr. Vellani opined that "the presence of [a] security guard would not have necessarily prevented the incident." (Docket Entry No. 32-8 at 5) (¶ 21). Ms. Denman provides no contrary evidence.

The defendants were not required to take "extraordinary measures," such as having "conspicuous security at every point of potential contact between a patron and a criminal." *See UDR Tex. Props., L.P.*, 517 S.W.3d at 103 (quotation marks and quoting reference omitted). Ms.

---

[10] The defendants submitted a one-minute video that they contend is "video surveillance taken outside Kimberly Pointe" showing the area in front of the property management office on "the evening of July 1, 2022, regarding the Decedent Dillon Denman's incident." (Docket Entry No. 32-4) (video); (Docket Entry No. 32-3 at 1–2) (¶ 4) (Ms. Dilley's affidavit explaining the video). Ms. Denman objects to the video under Federal Rules of Evidence 901 and 1002. Ms. Denman contends that the video "has no timestamps," "is not in its original form," "appears to be sped up," and is "a recording on a different device of a surveillance video that is being played on a computer." (Docket Entry No. 39 at 6). The court agrees with those observations. Federal Rule of Evidence 1002 states that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." The defendants admit that the video is a recording—made by the Kimberly Pointe Apartments property manager on her phone—of the original surveillance video. (Docket Entry No. 46 at 1). They do not explain why the video, which is a copy of the original, should not be excluded under Rule 1002. (*See* Docket Entry No. 40 at 3) (arguing only that the video is "authenticated pursuant to Fed. R. Evid. 901(b)(1)"). Because the defendants have not pointed to a rule or statute that would make the property manager's recording of the original video admissible, the court will not consider the video, (Docket Entry No. 32-4). Even if the court considered the video, it would not change the outcome. The video shows several people socializing and walking around the parking lot until someone starts shooting, apparently without warning. (Docket Entry No. 32-4). The video supports this court's conclusion that the defendants did not fail to reduce or eliminate an unreasonable risk of third-party violent crime.

15

Denman does not explain why the "individual and social interests implicated by the facts of [this] case" support the conclusion that the defendants were unreasonable not to hire a security patrol. *See id.* at 101 (quoting reference omitted). Ms. Dilley testified that it "wouldn't be feasible" for the Kimberly Pointe Apartments to have a security guard to "search everybody that comes through with metal detectors." (Docket Entry No. 61-1 at 78). Other than that testimony and the defense expert's report, there is no evidence in the record on which the court can assess whether the defendants' failure to have security patrolling on the night of July 1, 2022, was unreasonable. *Cf. UDR Tex. Props., L.P.*, 517 S.W.3d at 105 (rendering judgment for an apartment complex because the plaintiff "failed to offer evidence of the burden that would be imposed on [the apartment complex] to prevent or reduce the risk from a crime like this one").[11]

Ms. Denman has not raised a genuine factual dispute material to determining whether the defendants failed to use ordinary care to reduce or eliminate an unreasonable risk of third-party violent crime at the Kimberly Pointe Apartments.

## IV.  Conclusion

The record does not raise a factual dispute as to whether the defendants owed and breached a duty to protect Dillon from third-party gun violence. The defendants' motion for summary judgment, (Docket Entry No. 32), is granted. This case is dismissed, with prejudice.

SIGNED on August 22, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge

---

[11] The court similarly has no evidentiary basis on which to assess whether it was unreasonable that the defendants did not do "monthly light checks" or have someone "enforcing the displayed signs" that prohibited trespassing and guns. (*See* Docket Entry No. 62 at 2).